899 F.2d 1375
 UNITED STATES of America, Plaintiff,
v.
Stephen Craig TOBIAS; Constance S. Tobias, Defendants-Appellants,
Harry I. Johnson, Jr.; Jolene T. Johnson, Defendants-Appellees,
and
396.31 Acres of Land, More or Less, Situated in the County
of Roanoke, State of Virginia, Defendant (Two Cases).
UNITED STATES of America, Plaintiff,
v.
Harry I. JOHNSON, Jr.; Jolene T. Johnson; George Moore,
Trustee for Harry I. Johnson, III, Defendants-Appellants,
Stephen Craig Tobias; Constance S. Tobias, Defendants-Appellees,
396.31 Acres of Land, More or Less, Situated in the County
of Roanoke, State of Virginia, Defendant.
 Nos. 88-1356, 88-1381 and 88-1373.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 1, 1989.
Decided Feb. 9, 1990.
Rehearing and Rehearing En Banc
Denied April 12, 1990.
 
 William Beverly Poff, Frank K. Friedman (Woods, Rogers & Hazlegrove, George I. Vogel, II, James R. Cromwell, Wilson, Vogel & Creasy, on brief), for defendants-appellants.
 William J. Creech, Jr., Melissa J. Warner (Gentry Locke Rakes & Moore, on brief), for defendants-appellees.
 Before HALL and CHAPMAN, Circuit Judges, and WINTER, Senior Circuit Judge.
 HARRISON L. WINTER, Circuit Judge:
 
 
 1
 This case involves the doctrine of adverse possession. Stephen Craig Tobias and Constance S. Tobias appeal from an order of the district court granting judgment n.o.v. and in the alternative, a new trial, in favor of Harry I. Johnson, Jr. and Jolene T. Johnson (collectively "Johnson"). 696 F.Supp. 185. The Tobiases had intervened as claimants in an action brought by the United States against Johnson to condemn 369 acres of land in Roanoke County, Virginia. After the government and the defendants reached an agreement on just compensation,[1] the court conducted a jury trial to determine the rights of each defendant as to the disputed land. The jury found that Johnson had not established title to the land by adverse possession. The district court, however, granted Johnson's motion for judgment n.o.v. and a new trial, and found that Johnson established title by adverse possession "as a matter of law." Because we conclude that the evidence supported the verdict for the Tobiases, we reverse the order of the district court and direct it to reinstate the jury verdict and enter judgment thereon.
 
 I.
 
 2
 The property in question is located in a mountainous, undeveloped part of western Virginia. The region is locally known as McAfee's Knob and is frequented by hikers and campers. In this litigation, the disputed property involves what is called an "interlock"--a tract to which opposing claimants possess conflicting title. See Koiner v. Rankin's Heirs, 52 Va. (11 Gratt.) 419, 428 (1854). Here, part of the McAfee's Knob area is claimed by both Johnson and the Tobiases and part is not contested. See Uncolored Appendix. The Tobiases claim title to a larger, "parallelogram" area consisting of 470 acres, of which 219 overlap with Johnson's claim. Johnson claims all of Tracts A, B, and C, parts of which are uncontested, and so Johnson already has received approximately $190,000 from the government.
 
 
 3
 The district court heard testimony and received documentary evidence for three days concerning the nature, quality, and duration of Johnson's possession. The evidence disclosed the following:
 
 
 4
 Johnson's color of title to the interlock originated from the conveyances in 1945 of three parcels of land (Tracts A, B, and C) to Johnson and his father, Harry Johnson, Sr.[2] Tract A consists of 93 acres and contains a two-story house that was built by the prior owner, the Dolin family, in 1928. This tract was conveyed to Johnson, Jr. and his sister, although Johnson, Sr. paid for the land. Tracts B and C were conveyed to Johnson, Sr., and title to these tracts did not pass to Johnson, Jr. until 1976.
 
 
 5
 From 1945 to 1955, the Johnson family used the house on Tract A for weekends, vacations, and summer breaks. Because the Dolins had let the house fall into disrepair after moving away in 1935, the Johnsons did a considerable amount of work on the property. In addition to painting and planting trees, the Johnsons erected "no trespassing" signs and built a gate at the entrance to Route 311, the state road about 4 miles from the boundary of Tracts A and B. However, from 1955 to 1957, the Johnson visits to the area became less frequent and, by 1957, the house was abandoned and in considerable disarray. From 1957 to 1966, Johnson did not use the property very much, although he did put a new roof on the house and maintain the roadways and "no trespassing" signs. In 1961, Johnson, Sr. granted to the Appalachian Power Company ("APCO") an easement on Tract B for the erection of a twenty-foot wide transmission line. In 1966, because of increasing problems of vandalism and "wanton destruction" of the property, Johnson gave up hope of maintaining the house on Tract A. From 1966 to the present, the Johnsons have made only infrequent visits to the property. Over the years, however, they have given various visitors permission slips to use the property for McAfee Knob hiking trips.
 
 
 6
 Mr. Tobias' superior paper title to the interlock dates back to 1785. The Tobias property, consisting of 470 acres in Roanoke and Botetourt counties, was deeded or devised down through the Tobias family until, in 1960, Mr. Tobias' grandmother conveyed the land to Tobias and his stepfather.[3] From the early 1950s, when Tobias and his stepfather first surveyed the property, to the present, the Tobiases have used the property for sporadic hunting and hiking trips, and have never been off the land for longer than two years. At the trial, Mr. Tobias stated that he has paid property taxes to Roanoke County since he acquired the land in 1960. Mr. Tobias and his stepfather also testified to a meeting with Johnson, Sr. over the property sometime in the early 1950s. At the meeting, the Tobiases showed Johnson, Sr. a map of the area, and the elder Johnson admitted that "boundary problems" existed. Despite the knowledge that such a dispute existed, neither party mounted a legal challenge to the other's title until the government sought to condemn the land.
 
 
 7
 After this evidence was presented, the district court instructed the jury that, to prevail, Johnson must establish the elements of adverse possession by a preponderance of the evidence.[4] The district court also rescinded an earlier instruction that the jury must consider adverse possession of each tract individually, and reinstructed the jury that if Johnson established adverse possession to any one tract, he should receive title to all of the disputed land. After four hours of deliberation, the jury found that (1) Tobias had superior paper title to the property, and that (2) Johnson had not obtained legal title by adverse possession.[5]
 
 
 8
 Despite these findings, the district court ruled that Johnson's actual possession was of "sufficient quality and duration to oust Tobias' constructive possession." It found also that Tobias was on notice of Johnson's hostile possession from at least 1961, the time of APCO's erection of its power line, to the present, which is far more than the required 15 years. Finally, the district court found that, because the three parcels were in the Johnson family since 1945, the continuous possession of one area of the interlock "is possession of the whole." On these findings, the district court granted judgment n.o.v. and a conditional new trial. Tobias appeals these rulings.
 
 II.
 
 9
 The standard governing our review of a judgment n.o.v. is well settled. If evidence exists upon which a jury could reasonably find in favor of Tobias, we must reverse the judgment n.o.v. Chuck's Feed & Seed Co. v. Ralston Purina Co., 810 F.2d 1289, 1292 (4 Cir.), cert. denied, 484 U.S. 827, 108 S.Ct. 94, 98 L.Ed.2d 55 (1987). Further, in reviewing the record, we are "not free to weigh the evidence or to pass on the credibility of witnesses," but must instead "view the evidence most favorably to [the Tobiases] and give [the Tobiases] the benefit of all reasonable inferences from the evidence." Whalen v. Roanoke County Bd. of Supervisors, 769 F.2d 221, 224 (4 Cir.1985) (quoting 9 C. Wright & A. Miller, Federal Practice & Procedure Sec. 2524, at 543-45 (1971)), vacated on reh'g on other grounds, 797 F.2d 170 (4 Cir.1986) (en banc). To this already imposing standard, we add that in reviewing an adverse possession claim, "[a]ll presumptions favor the holder of legal title." Alford v. Alford, 236 Va. 194, 197, 372 S.E.2d 389, 390 (1988) (quoting Matthews v. W. T. Freeman Co., 191 Va. 385, 395, 60 S.E.2d 909, 914 (1950)). Tested by these principles, we conclude that the evidence clearly supports the jury's verdict that Johnson failed to establish adverse possession.
 
 
 10
 Under Virginia law, an adverse possessor must establish by clear and convincing evidence that his possession was " 'actual, hostile, exclusive and continuous ... for the period of the statutory bar' by 'acts of such notoriety that the true owner has actual knowledge, or may be presumed to know, of the adverse claim.' " Custis Fishing & Hunting Club., Inc. v. Johnson, 214 Va. 388, 392, 200 S.E.2d 542, 545 (1973) (quoting Leake v. Richardson, 199 Va. 967, 976, 103 S.E.2d 227, 234 (1958)); see also Va.Code Ann. Sec. 8.01-236 (1984) (establishing 15-year statutory period). Here, it is undisputed that Johnson actually possessed part of the interlock, and that such possession was antagonistic, or "hostile," to Tobias' interest. Thus, the primary dispute concerns the requirements of "exclusivity" and "continuity" to establish adverse possession.
 
 A. Exclusivity of Johnson's Possession
 
 11
 This element of adverse possession typically requires the claimant to exclude others from actual possession. See generally 7 R. Powell & P. Rohan, Powell On Real Property p 1013, at 91-19 (1989) ("Possession that is concurrent with that of the true owner is never exclusive."); Leon v. Byus, 115 Ariz. 451, 565 P.2d 1312 (Ct.App.1977) ("adverse" connotes that one in possession of land claims an exclusive right and denies by word or action the owner's title). The Virginia Supreme Court has taken a similar view. In Custis Fishing & Hunting Club, supra, a club attempted to establish adverse possession to a pond by excluding trespassers, posting "no fishing" signs, and employing caretakers. Although this activity went on for 60 years, the court held that the club failed to establish adverse possession because these acts were not inconsistent with the rights of the owner. The court concluded that the club's conduct, "[a]bsent efforts intended specifically to exclude the [owners] or their predecessors," was neither "exclusive nor hostile as a matter of law with respect to the [owners]." 214 Va. at 393, 200 S.E.2d at 546-47 (emphasis added).
 
 
 12
 In the instant case, uncontroverted evidence established that the Johnsons never acted specifically to exclude Tobias from the interlock, but in fact recognized his presence. According to testimony from both Tobias and his stepfather, the Tobiases confronted Johnson, Sr. sometime in the early 1950s with their title and a map, at which point the elder Johnson admitted that "boundary problems" existed. After this encounter, Tobias and his family began steady although infrequent use of the area around McAfee's Knob. Johnson never manifested an exclusive right to the interlock or attempted to block Tobias' entry. Indeed, one of Johnson's witnesses admitted that he provided Tobias with a key to the gate off Route 311 so that Tobias could proceed onto his property.
 
 
 13
 In response, Johnson argues that he established exclusive possession by maintaining the house on Tract A and by granting APCO the right to erect a power line on Tract B. These events, Johnson argues, were acts "of such notoriety" that Tobias knew, or should have known, of the adverse claim. We would agree that such activities may have put Tobias on notice of Johnson's possession,[6] but mere notice of an adverse claim is insufficient to establish adverse possession. In Custis Fishing & Hunting Club, supra, the Virginia Supreme Court held that the posting of signs and the employing of caretakers for 60 years, activities that assuredly constitute actual or constructive notice, were insufficient to establish adverse possession. 214 Va. at 393, 200 S.E.2d at 547. Similarly, in Craig-Giles Iron Co. v. Wickline, 126 Va. 223, 232, 101 S.E. 225, 229 (1919), the same court ruled that the posting of "no trespassing" signs, the "occasional cutting of timber," and the payment of taxes were insufficient, by themselves, to establish adverse possession. See also Leake v. Richardson, 199 Va. 967, 976, 103 S.E.2d 227, 236 (1958) (stocking pond with fish and maintaining and repairing dam not enough for exclusive possession).
 
 
 14
 Even without giving the Tobiases the benefit of every inference, the evidence here clearly establishes that Johnson's possession was not exclusive. From the mid-1950s to the present, both parties have used the interlock intermittently for recreational purposes. During this time, each party has used this land with the knowledge that the other had a claim to part of it, but neither party did anything to exclude the other. Such concurrent use is not enough to establish title by adverse possession. Cf. Austin v. Minor, 107 Va. 101, 109, 57 S.E. 609, 612 (1907) (concurrent hunting and fishing on marshland by both owner and adverse claimant insufficient to establish adverse possession).
 
 B. Continuity of Johnson's Possession
 
 15
 In order for Johnson to claim ownership of even a part of the interlock, he and/or a prior owner must have fulfilled all the requirements of adverse possession for 15 years. Va.Code Ann. Sec. 8.01-236 (1984). Although the district court was of the view that Johnson continuously possessed Tract A from 1945 to the present, there is enough evidence to support the jury's opposite conclusion.
 
 
 16
 As in most states, Virginia follows the rule that once the adverse claimant vacates the premises, the owner, by reason of his legal title, will be regarded as in constructive possession and the adverse period of the claimant is at an end. Stonestreet v. Doyle, 75 Va. 356, 371 (1881). Cf. 7 R. Powell & P. Rohan, Powell On Real Property p 1013, at 91-27 (1989) (continuity requirement not satisfied where "possession was inexplicably intermittent, or alternated with use by the true owner") (footnote omitted). The evidence in this case demonstrates that Johnson continuously possessed the land and house on Tract A from 1945 to 1957. But after 1957, there was evidence that Johnson stopped caring for and using the house and surrounding property. Johnson's own witness testified that after Johnson bought the property, "I never saw anyone up there.... I didn't ever see anyone use it much, other than hikers and people like that." While this inattention after 1957 may not constitute permanent abandonment, it was reasonable for the jury to assume that Johnson had ceased possession by 1957. After this time, Johnson made some repairs to the house and maintained the nearby roads, but his use of Tract A was minimal, except for sporadic recreational trips (about the same use as Tobias).[7] Conceivably, one could infer continuous possession after 1957 from these acts. However, the jury also could have inferred that Johnson maintained the nearby roads to provide access to his uncontested land, as opposed to the disputed property. Taking, as we must, this inference in favor of Tobias, we conclude that the evidence supports a finding that Johnson did not continuously possess the interlock for the required 15 years.
 
 
 17
 This break in exclusive and continuous possession in 1957 could be rendered meaningless if Johnson could "tack" the possession of the prior tenants onto his occupancy. "Tacking" allows successive adverse users in privity with prior adverse users to aggregate the two adverse periods. See Harris v. Deal, 189 Va. 675, 54 S.E.2d 161 (1949). However, tacking is prohibited if the prior owner abandons the premises. Hollingsworth v. Sherman, 81 Va. 668, 674 (1885).
 
 
 18
 The Johnsons argue that they are entitled to reap the benefits of their prior possessor, the Dolins, who erected the house on Tract A in 1928.[8] At trial, however, several witnesses testified that the Dolins abandoned the house and the property in 1935, a full ten years before they sold the property to the Johnsons. These witnesses stated that the Dolins very rarely went back to the house after 1935. Whether these "occasional visits" to "check up" on the house constitute continuous possession is unclear. Again, however, we must resolve all inferences in favor of the Tobiases, and so we conclude that Johnson may not "tack" the possession of the Dolins onto the period of his adverse possession.
 
 
 19
 In summary, we think that the evidence supports the jury's conclusion that Johnson failed to meet the stringent requirements of adverse possession. Having found that Johnson cannot establish adverse possession over any portion of the interlock, we need not address Tobias' contention that adverse possession over Tract A cannot constitute constructive adverse possession over Tracts B and C because they were owned by different titleholders until 1976.
 
 III.
 
 20
 Tobias' final challenge concerns the district court's granting of a new trial. Pursuant to Fed.R.Civ.P. 50(c)(1), the district court ruled that Johnson was entitled to a new trial because the jury verdict was "against the clear weight of the evidence." As aptly stated by a sister circuit, when a new trial is granted on the ground that the verdict was against the weight of the evidence,
 
 
 21
 the [trial] judge takes over, if he does not usurp, the prime function of the jury as the trier of the facts. It then becomes the duty of the appellate tribunal to exercise a closer degree of scrutiny and supervision than is the case where a new trial is granted because of some undesirable or pernicious influence obtruding into the trial. Such a close scrutiny is required in order to protect the litigants' right to a jury trial.
 
 
 22
 McNeal v. Hi-Lo Powered Scaffolding, Inc., 836 F.2d 637, 646-47 (D.C.Cir.1988) (quoting Lind v. Schenley Indus., 278 F.2d 79, 90 (3 Cir.) (en banc), cert. denied, 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960)).
 
 
 23
 In the instant case, the district court did not elaborate on why it thought that the evidence was insufficient to support the verdict, although it noted that because it granted the judgment n.o.v., the verdict, "of necessity," was against the clear weight of the evidence. To the contrary, we have concluded that substantial evidence exists to support the jury's finding of no adverse possession. Since the district court's decision to grant a new trial was "based on the same flawed reasoning that led to its ruling on the judgment n.o.v., it abused its discretion when it conditionally ordered a new trial." McNeal, 836 F.2d at 647.
 
 
 24
 Johnson argues, in the alternative, that a new trial is warranted because counsel's closing argument was improperly restricted and the jury confused by conflicting instructions. Johnson maintains that by first instructing the jury that adverse possession of each tract was required, the district court forced counsel to argue adverse possession for each tract during closing argument.[9] We are not persuaded that a new trial is warranted. The second instruction--that adverse possession of one tract was tantamount to possession of all three tracts--was one that Johnson had sought, and it was more favorable to Johnson than the original instruction. Johnson's counsel did not seek permission to make any additional argument, nor did he lodge any objection to the giving of the second instruction. Under these circumstances, we see no basis on which to grant a new trial.
 
 IV.
 
 25
 To summarize, we conclude that a reasonable juror could have found that Johnson failed to prove all the elements of his adverse possession claim. Consequently, the district court erred when it granted Johnson's motion for judgment n.o.v. Because the district court has not adequately justified its conditional grant of a new trial, and we perceive no basis to justify it, the order granting a new trial is vacated. We remand the case to the district court with instructions to reinstate the jury's verdict and enter judgment thereon.
 
 
 26
 REVERSED AND REMANDED.
 
 
 27
 ON PETITION FOR REHEARING WITH SUGGESTION FOR REHEARING IN BANC
 
 
 28
 The appellants' petition for rehearing and suggestion for rehearing in banc were submitted to this Court. As no member of this Court or the panel requested a poll on the suggestion for rehearing in banc, and
 
 
 29
 As the panel considered the petition for rehearing and is of the opinion that it should be denied,
 
 
 30
 IT IS ORDERED that the petition for rehearing and suggestion for rehearing in banc are denied.
 
 
 31
 Entered at the direction of Judge Hall with the concurrence of Judge Chapman. Judge Winter participated in the decision of this case but died before the decision was filed. The decision is filed by a quorum of the panel. 28 U.S.C. 46(d).
 
 Uncolored Appendix
 
 32
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 
 [1]
 The government agreed to pay $475,000 for the entire condemned land, or $1,286.18 per acre
 
 
 [2]
 These three parcels were held by three individuals, P.W. Dolin, W.M. Oakey, and R.W. Oakey, who obtained deeds to four separate tracts in 1920. Another parcel, Tract D, is not claimed by either party in this litigation
 
 
 [3]
 Mr. Tobias purchased the remaining one-half interest in the property from his stepfather in 1973
 
 
 [4]
 This instruction was in error. Virginia requires an adverse possessor to establish his claim by clear and convincing evidence. Pettus v. Keeling, 232 Va. 483, 352 S.E.2d 321 (1987). The error would be harmless, however, if sufficient evidence existed to support the jury's verdict because, if Johnson failed to establish adverse possession by a preponderance of the evidence, he surely failed to establish it by a more exacting evidentiary standard
 
 
 [5]
 These findings were the result of two special verdict questions. In this appeal, Johnson does not contest the jury's finding that Tobias held superior paper title
 
 
 [6]
 We note, however, that an opposite inference could be drawn from the erection of the APCO power line. It is entirely possible that Tobias did not realize that the power line was constructed with the specific permission of Johnson
 
 
 [7]
 The granting of an easement to APCO in 1961 occurred on Tract B
 
 
 [8]
 At oral argument, counsel for the Johnsons argued that the house was constructed in 1919, and maintained that the possession from 1919 to 1935 satisfied the 15-year requirement. At trial, most of the evidence suggested that the house was built in 1928, and only one witness mentioned 1919 as a possible construction date. Because of the evidence favoring the 1928 date, we reject this argument
 
 
 [9]
 At the end of the trial, the district court first refused to instruct the jury that adverse possession of Tract A would, as a matter of law, entitle Johnson to constructive possession of Tracts B and C. Recognizing this as error, the court brought the jury back after the closing arguments and re-instructed them as to the controlling Virginia law