**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JIMMIE DONALD CREECH,
<u>Plaintiff-Appellant,</u>

v.

TIEN D. NGUYEN, M.D.,
<u>Defendant-Appellee,</u>

and

WALLACE COX; DINWIDDIE COUNTY
ADMINISTRATOR; BENNIE HEATH;
LAWRENCE K. MALLORY; MERYLE

WILKINS; OFFICER CLIFF MAITLAND;
CORRECTIONAL OFFICER JAMES
WEAVER; DWAYNE GILLIAM; JOHN
DOE, III, Warden; M. ORNELAS;
MR. WALCH; DR. J. HARLAND;
DR. DANIEL LASKIN, D.D.S.;
DR. JEFFREY CYR, D.D.S.; DR.
KIMBERLEY S. SWANSON, D.D.S.;
MUHAMMED SARKER, M.D.,
<u>Defendants.</u>

No. 97-6925

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Henry C. Morgan, Jr., District Judge;
William T. Prince, Magistrate Judge.
(CA-92-970-2)

Argued: March 4, 1998

Decided: August 7, 1998

Before HAMILTON and WILLIAMS, Circuit Judges, and
BROADWATER, United States District Judge for the
Northern District of West Virginia,
sitting by designation.

Vacated and remanded with instructions by unpublished opinion. Judge Hamilton wrote the majority opinion, in which Judge Broadwater joined. Judge Williams wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Scott William Kezman, KAUFMAN & CANOLES, Norfolk, Virginia, for Appellant. Carlyle Randolph Wimbish, III, SANDS, ANDERSON, MARKS & MILLER, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

HAMILTON, Circuit Judge:

Jimmie Creech (Creech) brought this civil rights action under 42 U.S.C. § 1983 against Dr. Tien Duc Nguyen, M.D. (Dr. Nguyen), an attending physician at the receiving and classification unit at Powhatan Correctional Facility in Virginia (Powhatan). Creech's action alleged that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution while an inmate at Powhatan as a result of Dr. Nguyen's deliberate indifference to his serious medical need for post-operative care at the Medical College of Virginia's Oral Surgery Clinic (MCV's Oral Surgery Clinic).[1] Creech had undergone oral surgery at MCV's Oral Surgery Clinic on October 3, 1990 to immobilize his jaw so that a fracture to his jaw would heal properly, but he was not returned for post-operative care until January 11, 1991. A jury found in favor of Creech and awarded Creech $60,000 in damages. The United States

_____

[1] Creech's complaint also named several other persons as defendants who are not parties to this appeal.

2

magistrate judge who tried the case granted Dr. Nguyen's post-trial motion for judgment as a matter of law and conditionally granted Dr. Nguyen's motion for a new trial. On appeal, Creech seeks reinstatement of the jury's verdict on the basis that the magistrate judge erred by entering judgment in favor of Dr. Nguyen and by conditionally granting Dr. Nguyen's motion for a new trial. For reasons that follow, we conclude the magistrate judge erred by entering judgment in favor of Dr. Nguyen and by conditionally granting Dr. Nguyen's motion for a new trial. Accordingly, we vacate the magistrate judge's entry of judgment in favor of Dr. Nguyen, vacate the magistrate judge's order conditionally granting Dr. Nguyen's motion for a new trial, and remand with instructions to the magistrate judge to enter judgment in favor of Creech on the jury's verdict.

I.

On October 2, 1990, while an inmate at the Dinwiddie, Virginia county jail, Creech suffered a minimally displaced angle fracture of his left mandible as the result of an assault by a fellow inmate. After being examined at the emergency room of a local hospital, Creech was taken to MCV's Oral Surgery Clinic in Richmond, Virginia for specialized care. The next day, on October 3, 1990, Creech underwent oral surgery to immobilize his jaw for the purpose of allowing his fracture to heal properly. The surgery consisted of anaesthetizing Creech and affixing metal arch bars with small hooks to his upper and lower teeth. After surgery, elastics were attached to the small hooks thereby immobilizing Creech's upper and lower jaws in a closed-mouth position referred to in the medical field as intermaxillary fixation.

Creech's oral maxillofacial surgeon at MCV's Oral Surgery Clinic, Dr. Daniel Laskin, D.D.S. (Dr. Laskin), intended for Creech to remain in intermaxillary fixation between six and ten weeks as determined by post-operative progress and evaluation.[2] Creech was discharged from

_____

[2] The mandible is surrounded by very large muscles that control its motion. When a person sustains a mandible fracture, there is a lot of bleeding within the muscle, and this bleeding pulls in and around the muscle bellies causing the development of scar tissue clinically known

3

MCV's Oral Surgery Clinic on October 4, 1990. In Creech's discharge instructions, Dr. Laskin stated that Creech was scheduled for post-operative treatment at MCV's Oral Surgery Clinic on October 9, 1990. According to Dr. Laskin, this post-operative treatment was medically necessary. Indeed, mandible fractures set by intermaxillary fixation require weekly evaluations by an oral surgeon in order to ensure there is no infection, that the jaws are in proper alignment, and that intermaxillary fixation is adequate and still necessary. With proper post-operative care, a patient with a mandibular fracture such as Creech should recover full range of jaw motion.

Following his discharge from MCV's Oral Surgery Clinic, Creech was taken to the infirmary at Powhatan where he was treated by the infirmary's attending physician, Dr. Sarker, until his discharge on October 26, 1990. On October 15, 1990, Dr. Sarker wrote an order in Creech's medical chart that his return to MCV's Oral Surgery Clinic be "expedite[d]." (J.A. 276).

Dr. Nguyen, who was the attending physician at Powhatan's receiving and classification unit, also took some responsibility for Creech's medical care while Creech was in the infirmary.[3] First, on October 5, 1990, Dr. Nguyen reviewed Creech's discharge summary from MCV's Oral Surgery Clinic and wrote an order in Creech's medical chart that Creech be seen at MCV's Oral Surgery Clinic on October 9, 1990.[4] Dr. Nguyen also ordered that Creech receive a liq-

_____

as fibrosis. Most of the time, the scar tissue is easily broken up by simple movement of the jaw as late as five to six weeks after the person has sustained a mandible fracture. However, if a person who has sustained a mandible fracture is kept in intermaxillary fixation beyond this period of time, the person could suffer varied degrees of permanent limitation of his jaw mobility due to the continuing formation of mature scar tissue that cannot be broken up by mouth exercises.

[3] Dr. Nguyen had been on staff at Powhatan since 1988.

[4] Once a physician at Powhatan writes an order in a prisoner's medical chart ordering that the prisoner be seen at an outside medical facility, the physician's nurse is responsible for passing the order along to Powhatan's medical appointment clerk who is responsible for scheduling the actual appointment at the outside medical facility. With respect to

4

uid diet. Although Dr. Nguyen examined Creech in the infirmary on October 11, 1990, he was not again directly involved in Creech's medical care until after Creech was discharged from the infirmary on October 26, 1990 and assigned to Powhatan's receiving and classification unit. For reasons unexplained in the record, Creech was not returned to MCV's Oral Surgery Clinic on October 9, 1990 as ordered by Dr. Nguyen.

As of November 6, 1990, Dr. Nguyen understood that an appointment at MCV's Oral Surgery Clinic had been made for Creech, but he did not know the date of the appointment.[5] Accordingly, after Dr. Nguyen examined Creech on November 6, 1990, he wrote a note in Creech's medical chart that Creech be taken to the follow up appointment at MCV's Oral Surgery Clinic as scheduled. Dr. Nguyen also ordered that Creech be examined by one of the prison dentists. On November 14, 1990, a prison dentist examined Creech and noted in Creech's medical chart that he needed to be seen at MCV's Oral Surgery Clinic "ASAP."[6] (J.A. 266).

On November 26, 1990, Dr. Nguyen filled out a Consultation Form with respect to Creech's appointment scheduled for later the same day at MCV's Oral Surgery Clinic. For reasons unexplained in the record, prison officials failed to take Creech to the appointment. Dr. Nguyen learned of this fact the same day, and thereafter wrote an order in Creech's medical chart that he be taken to MCV's Oral Surgery

_____

MCV's Oral Surgery Clinic, it may take several weeks from the time that a physician at Powhatan requests an appointment for an inmate before the inmate is returned to the clinic. Either the day before or the day of the scheduled appointment at the outside facility, the same Powhatan physician who ordered the outside appointment must fill out a form called a "Consultation Form," which accompanies the patient to the appointment at the outside medical facility. According to Dr. Nguyen, because he must fill out a Consultation Form before one of his patients visits an outside medical facility, he "always know[s]" when one of his patients visits an outside medical facility. (J.A. 132).

[5] The appointment was actually scheduled for November 26, 1990.

[6] A general dentist cannot provide the type of specialized post-operative care needed by a patient such as Creech.

5

Clinic for post-operative care "ASAP." See (J.A. 46). Additionally, at this time, Dr. Nguyen reviewed all of the orders previously written in Creech's medical chart, including the order on November 14, 1990 by the prison dentist that Creech be returned to MCV's Oral Surgery Clinic "ASAP." Despite Dr. Nguyen's November 26, 1990 order to the same effect, Creech was not returned to MCV's Oral Surgery Clinic for post-operative care until January 14, 1991, fourteen weeks after Creech's surgery and four weeks past the latest time that Dr. Laskin intended for Creech to be fully relieved of intermaxillary fixation. Indeed, although Creech was under the care of Dr. Nguyen, he received no medical care the entire month of December 1990 and the first ten days of January 1991.

On January 11, 1991, Creech sought treatment from Dr. Nguyen for a cold and inquired of Dr. Nguyen when he would be returned to MCV's Oral Surgery Clinic for post-operative care. Dr. Nguyen testified during his pre-trial deposition that, when he examined Creech on January 11, 1990, enough of the elastics keeping Creech in intermaxillary fixation were still in place that he was just able to project a small pen light to see Creech's throat. He also described the tension of the elastic bands that were still in place as "not very loose." (J.A. 152). Dr. Nguyen later attached an errata sheet to the transcript of his deposition in which he essentially recanted this testimony, stating that after he subsequently reviewed Creech's medical records and certain documents prepared by Creech in November of 1990, he believed that the elastics were no longer on when he examined Creech on January 11, 1990.[7] After examining Creech on January 11, 1990, Dr. Nguyen

_____

[7] The documents referred to by Dr. Nguyen were two prison grievance forms filed by Creech in November 1990. A prison grievance form is a mechanism whereby a prisoner can complain of his conditions to prison officials and request relief. Creech filed three prison grievance forms in all, two in November and one in December, complaining that he needed to return to MCV's Oral Surgery Clinic because all of the elastic bands in his mouth had broken. Contrary to the prison grievance forms, Creech testified at trial that when Dr. Nguyen examined him on January 11, 1991, some of the elastics bands keeping him in intermaxillary fixation were still on. Creech's explanation at trial for the inconsistency between his trial testimony and his statements in the grievance forms was that the grievance forms were desperate attempts on his part to get somebody to respond to his request for post-operative care.

6

noted in Creech's medical chart that he had difficulty chewing and a "limitation of mouth opening secondary to wiring." (J.A. 146-47).

Dr. Harland, the senior dentist at Powhatan, also examined Creech on January 11, 1991. After learning that Creech had never been returned to MCV's Oral Surgery Clinic for post-operative care, Dr. Harland was able to schedule Creech's return to MCV's Oral Surgery Clinic on January 14, 1991.[8] Creech was returned to MCV's Oral Surgery Clinic for that appointment where he was seen by an oral surgeon, Dr. Cyr, who noted that the elastics holding Creech's jaw in intermaxillary fixation were no longer in place. Dr. Cyr then removed the metal arch bars from Creech's teeth.

Creech subsequently filed this action pursuant to 42 U.S.C. § 1983 in the United States District Court for the Eastern District of Virginia against Dr. Nguyen and several others who are not parties to this appeal. Of relevance here, Creech alleged that Dr. Nguyen violated his right under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment by being deliberately indifferent to his serious medical need for post-operative care. After discovery, Dr. Nguyen moved for summary judgment, which the district court denied.

The case proceeded to trial before a jury, which the parties agreed would be conducted by a magistrate judge. At trial, Creech offered the expert testimony of oral surgeon Dr. Michael Schwartz, D.D.S. (Dr. Schwartz), that the permanent mobility range of Creech's jaw is significantly less than a normal adult male because he was left in prolonged intermaxillary fixation.[9]

_____

[8] Dr. Harland did not remember how he was able to expedite Creech's return to MCV's Oral Surgery Clinic, but he testified that he could have done it one of two ways. He may have personally telephoned MCV's Oral Surgery to schedule an appointment or he may have personally informed the appointment clerk at Powhatan that he wanted Creech seen at MCV's Oral Surgery Clinic as soon as possible.

[9] Dr. Schwartz did not actually testify at trial, but the jury heard and witnessed his deposition testimony by videotape. For ease of reference, we will treat Dr. Schwartz' testimony as if he had testified at trial.

7

Dr. Nguyen moved for judgment as a matter of law at the close of Creech's case in chief, which the magistrate judge denied. Dr. Nguyen renewed the motion at the close of all evidence, but to no avail. The jury returned a verdict in favor of Creech and awarded him $60,000 in damages. Dr. Nguyen again renewed his motion for judgment as a matter of law, and in the alternative, moved for a new trial. Ruling from the bench, the magistrate judge granted Dr. Nguyen's motion for judgment as a matter of law and conditionally granted Dr. Nguyen's motion for a new trial in the event judgment as a matter of law was set aside on appeal.

Creech filed a timely notice of appeal. On appeal, Creech challenges both the magistrate judge's grant of Dr. Nguyen's motion for judgment as a matter of law and the magistrate judge's conditional grant of Dr. Nguyen's motion for a new trial.

II.

Creech first maintains that the magistrate judge erred by granting judgment as a matter of law in favor of Dr. Nguyen under Federal Rule of Civil Procedure 50. We review de novo the magistrate judge's grant of judgment as a matter of law in favor of Dr. Nguyen to determine whether the evidence presented at trial, viewed in the light most favorable to Creech, would have allowed a reasonable jury to render a verdict in Creech's favor. See Price v. City of Charlotte, N.C., 93 F.3d 1241, 1249 (4th Cir. 1996), cert. denied , 117 S. Ct. 1246 (1997). Because the Seventh Amendment does not allow federal courts to review jury verdicts directly, Dr. Nguyen "bears a hefty burden in establishing that the evidence is not sufficient to support the award[ ]." Id. Recognizing that we may neither substitute our judgment for that of the jury nor make credibility determinations, we must conclude that judgment as a matter of law was granted erroneously if there is any evidence on which a reasonable jury could have returned a verdict in Creech's favor. See id. at 1249-50.

The Eighth Amendment, inter alia, prohibits the infliction of cruel and unusual punishment on one convicted of a crime. See U.S. Const. amend. VIII.**10** The law is well settled that scrutiny under the cruel and

_____

**10** The cruel and unusual punishment clause of the Eighth Amendment applies to the States through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See Wilson v. Seiter, 111 S. Ct. 2321, 2323 (1991).

unusual punishment clause of the Eighth Amendment"is not limited only to those punishments meted out by statute or imposed by a sentencing judge," but extends to "`the treatment a prisoner receives in prison and the conditions under which he is confined.'" Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997) (quoting Helling v. McKinney, 509 U.S. 25, 31 (1993)). Accordingly, a prisoner makes out a claim under the Eighth Amendment if he can establish that a prison doctor responsible for his medical care was deliberately indifferent to his serious medical needs. See Amos v. Maryland Dept. of Public Safety & Correctional Services, 126 F.3d 589, 610 (4th Cir. 1997).

Such a claim has both an objective and subjective component. See Rish, 131 F.3d at 1096. The objective component is satisfied upon proof that the prisoner suffered a "`serious or significant physical or emotional injury resulting from the challenged conditions,'" or that the prisoner was put at "substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions . . . ." Rish, 131 F.3d at 1096 (quoting Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993)). The subjective component is satisfied upon proof of deliberate indifference by the prison doctor, which requires proof that the prison doctor knew of and disregarded "an objectively serious [1] condition, [2] medical need, or [3] risk of harm." Id.; see also Amos, 126 F.3d at 610 (stating that "the `deliberate indifference' standard recognizes a constitutional violation where prison officials know of and disregard an objectively serious condition, medical need, or risk of harm."); Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (same).

A. The Objective Component.

The question of whether Creech met his burden of offering sufficient evidence, when viewed in the light most favorable to him, to satisfy the objective component of his Eighth Amendment claim will not detain us long. First, we note that whether Creech's need to be returned to MCV's Oral Surgery Clinic for post-operative care constituted a serious medical need was not in dispute below. In this regard, the magistrate judge instructed the jury without objection by Dr. Nguyen that:

9

> A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. In the present case, Mr. Creech has met his burden of proving that his need for specialized treatment for his broken jaw is a serious medical need, so you need not concern yourselves with that issue in reaching your verdict.

(J.A. 291). Second, we conclude that Creech has satisfied the objective component of a claim for deliberate indifference of a serious medical need even without relying on this jury instruction. Evidence was before the jury in the form of expert testimony that, following the type of oral surgery Creech underwent, weekly appointments with an oral surgeon are important to ensure the absence of infection, the correct alignment of the jaws so that the fracture will heal properly, and that at the appropriate time, as determined by the oral surgeon, the intermaxillary fixation is released in order to avoid permanent limitation of jaw mobility. Furthermore, evidence was before the jury that Creech suffers from a certain degree of permanent restriction of jaw mobility because he was not returned to MCV's Oral Surgery Clinic for post-operative care for approximately one month after the latest date that Dr. Laskin intended for Creech to be relieved of intermaxillary fixation. Based on this evidence, we find it difficult to believe that a reasonable juror would quarrel with the proposition that a patient such as Creech who has undergone oral surgery resulting in the intermaxillary fixation of his jaw has a serious medical need for post-operative care. In sum, the evidence at trial, viewed in the light most favorable to Creech, was sufficient to allow a reasonable jury to conclude that, objectively, Creech had a serious medical need to be returned to MCV's oral surgery clinic for post-operative care.

B. The Subjective Component.

We now consider whether the record contains any evidence from which a reasonable jury could have found that Dr. Nguyen knew of and disregarded Creech's objectively serious medical need to return to MCV's Oral Surgery Clinic for post-operative care. Whether Dr. Nguyen had the requisite knowledge of Creech's serious medical need is a question of fact subject to demonstration in the normal

10

ways, including inferences from circumstantial evidence, and a fact finder may conclude that Dr. Nguyen knew of Creech's serious medical need, if obvious, from the very fact that it was obvious. Cf. Farmer v. Brennen, 511 U.S. 825, 843 (1994) (noting that "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious" (citation omitted)). Furthermore, even if Dr. Nguyen is able to prove that he was in fact oblivious to an obvious medical need of sufficient seriousness, he "may not escape liability if it is shown, for example, that he merely refused to verify `underlying facts that he strongly suspected to be true,' which, if verified, would have compelled him to realize that" Creech had a serious medical need to be returned to MCV's Oral Surgery Clinic. Brice v. Virginia Beach Correctional Ctr, 58 F.3d 101, 105 (4th Cir. 1995) (quoting Farmer, 511 U.S. at 843 n.8).

1. Knowledge.

On the issue of whether Dr. Nguyen knew that post-operative care at MCV's Oral Surgery Clinic was a serious medical need of Creech, the jury had before it the following direct and circumstantial evidence: (1) testimony by Dr. Nguyen that he was the person who received Dr. Laskin's discharge instructions, instructing that Creech be returned to MCV's Oral Surgery Clinic for post-operative care on October 9, 1990; (2) an order in Creech's medical chart dated October 5, 1990 by Dr. Nguyen that Creech be seen at MCV's Oral Surgery Clinic on October 9, 1990; (3) an order in Creech's medical chart dated October 15, 1990 by Dr. Sarker that Creech's return to MCV's Oral Surgery Clinic be expedited; (4) an order in Creech's medical chart dated November 6, 1990 by Dr. Nguyen that Creech follow up with his scheduled appointment at MCV's Oral Surgery Clinic;[11] (5) an order in Creech's medical chart dated November 14, 1990 by one of the prison dentists that Creech needed to be seen at MCV's Oral Surgery Clinic "ASAP," (J.A. 266), which Dr. Nguyen testified at trial that he reviewed on November 26, 1990; (6) an order in Creech's medical chart dated November 26, 1990 by Dr. Nguyen

_____

[11] The appointment was scheduled for November 26, 1990.

11

that Creech be returned to MCV's Oral Surgery Clinic"ASAP," (J.A. 267); (7) testimony by Dr. Nguyen that he ordered Creech's return to MCV's Oral Surgery Clinic "ASAP" when he learned that Creech had missed his scheduled appointment earlier that day, because "Mr. Creech needed to be seen at MCV Oral Surgery Clinic," (J.A. 137); (8) testimony by Dr. Nguyen that, as of November 26, 1990, he knew that Creech had not been returned to MCV's Oral Surgery Clinic for post-operative care; and (9) testimony by Dr. Nguyen that, as of January 11, 1991, he knew that Creech had not been returned to MCV's Oral Surgery Clinic for post-operative care between November 26, 1990 and January 11, 1991 because he had not filled out a Consultation Form for Creech during this period of time.

Viewing this evidence in the light most favorable to Creech, a reasonable jury could find that Dr. Nguyen knew that Creech had a serious medical need to be returned to MCV's Oral Surgery Clinic for post-operative care. First, the various orders in Creech's medical chart that he be returned to MCV's Oral Surgery Clinic by the physicians who treated Creech through November 1990 were accompanied by words denoting an increasing sense of urgency that their orders be carried out. Dr. Nguyen testified at trial that on November 26, 1990, he reviewed all of these orders in Creech's medical chart. Second, the jury could have reasonably inferred the requisite knowledge on the part of Dr. Nguyen from his order on November 26, 1990, that Creech be returned to MCV's Oral Surgery Clinic "ASAP." At bottom, Dr. Nguyen cannot escape liability on this issue because his "ASAP" notation evidences that he strongly suspected Creech had a serious medical need to be returned to MCV's Oral Surgery Clinic for post-operative care, but failed to take steps to confirm his suspicion. See Brice, 58 F.3d at 105. Finally, we conclude without hesitation that this is one of those situations where the jury was entitled to infer that Dr. Nguyen knew of Creech's serious medical need to return to MCV's Oral Surgery Clinic for post-operative care from the very fact that it was obvious. Common sense dictates that a person who has undergone oral surgery needs to receive post-operative care by his surgeon or another qualified oral surgeon at some point within a reasonable amount of time following surgery. Here, Dr. Nguyen admits that he knew on January 11, 1991 that Creech had never been returned to MCV's Oral Surgery Clinic for post-operative care. In sum, the record contains evidence from which a reasonable jury could

12

have found that Dr. Nguyen knew that Creech had a serious medical need to be returned to MCV's Oral Surgery Clinic for post-operative care.

2. Disregard.

We next turn to consider whether, viewing the evidence in the light most favorable to Creech, a reasonable jury could have found that Dr. Nguyen disregarded Creech's serious medical need to return to MCV's Oral Surgery Clinic for post-operative care. Generally, once a physician at Powhatan orders that a prisoner be seen at an outside medical facility, the actual logistics of scheduling the appointment and transporting the prisoner to the appointment are handled by other prison employees. The undisputed evidence showed that if an inmate's appointment at MCV's Oral Surgery Clinic got canceled, it could take up to several weeks to get a new appointment.

Viewing the evidence in the light most favorable to Creech, the jury could have reasonably found that Dr. Nguyen disregarded Creech's serious medical need to be returned to MCV's Oral Surgery Clinic for post-operative care when he took no action to ensure that Creech returned to MCV's Oral Surgery Clinic between mid-December 1990 and early January 1991. Critically, the record contains evidence that Dr. Nguyen could have taken further action to expedite Creech's return or otherwise attempt to meet his serious medical need for post-operative care after five separate orders to return Creech to MCV's Oral Surgery clinic went unexecuted. Dr. Harland testified that, although physicians at Powhatan are asked to follow the chain of command in scheduling appointments, in his experience, when a physician at Powhatan believes that a prisoner urgently needs to be seen at MCV's Oral Surgery Clinic he can expedite the process by personally informing the appointment clerk that he wants the prisoner to be seen at MCV's Oral Surgery Clinic as soon as possible, or by personally telephoning MCV and setting up the appointment with an appropriate physician. (J.A. 65). Given Dr. Nguyen's two year tenure as an attending physician at Powhatan at the time that he treated Creech and Dr. Nguyen's testimony that in the past he had called outside specialists if he "really . . . needed" to consult with a particular specialist, (J.A. 141), the jury could have reasonably inferred that Dr. Nguyen also knew of these two ways to

13

expedite a prisoner's return to MCV. Notably, when Dr. Harland learned during his examination of Creech on January 11, 1991 that Creech had never returned to MCV's Oral Surgery Clinic for post-operative care, he promptly used one of these two ways to schedule an appointment for Creech to be seen within just three days.[12] Finally, at a minimum, Dr. Nguyen could have contacted Creech's oral surgeon to find out whether he, Dr. Nguyen, or a dentist at Powhatan could have treated Creech in some way as directed by the oral surgeon before Creech could be returned to the clinic in order to prevent Creech from suffering permanent physical harm. Obviously this was one of those times that Dr. Nguyen really needed to consult a specialist. In sum, the record contains evidence from which a reasonable jury could have found that Dr. Nguyen disregarded Creech's serious medical need to be returned to MCV's Oral Surgery Clinic for post-operative care.[13] In summary, because the record contains suffi-

_____

[12] From Dr. Harland's quick response to Creech's serious medical need to be returned to MCV's Oral Surgery Clinic for post-operative care, the jury could have reasonably inferred that Dr. Harland believed that Creech had a serious medical need to be returned to MCV's Oral Surgery Clinic for post-operative care, despite the fact that Dr. Harland testified at trial that Creech did not have a dental emergency akin to one who is suffering from a life threatening infection.

[13] The dissent asserts that the fact Dr. Nguyen could have taken actions to meet Creech's serious medical need to be returned to MCV's Oral Surgery Clinic for post-operative care, but did not, is inadequate as a matter of law to show that he consciously disregarded that need. See post at 21. According to the dissent, the appropriate questions are (1) whether the actions that Dr. Nguyen actually took, when considered in context, were reasonable under the circumstances, and if they were not, (2) whether the unreasonableness rises to the level of deliberate indifference. See id. The dissent goes on to characterize Dr. Nguyen's actions as reasonable when considered in context. See id. at 21.

In so characterizing, the dissent misses the crucial point that as of mid-December 1990 Dr. Nguyen knew that Creech still had a serious medical need to return to MCV's Oral Surgery Clinic for post-operative care, but nevertheless did nothing. Thus, the fact that Dr. Nguyen could have taken the steps outlined to meet Creech's serious medical need as opposed to doing nothing is sufficient for a reasonable jury to find that Dr. Nguyen disregarded Creech's serious medical need.

14

cient evidence from which the jury could have reasonably found that Creech had a serious medical need of which Dr. Nguyen had knowledge but disregarded, we hold that the magistrate judge erroneously entered judgment as a matter of law in favor of Dr. Nguyen.

III.

Creech's final challenge concerns the magistrate judge's conditional grant of Dr. Nguyen's motion for a new trial pursuant to Federal Rule of Civil Procedure 50(c)(1). In pertinent part, Rule 50(c)(1) provides:

> If the renewed motion for judgment as a matter of law is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment. In case the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered.

Fed. R. Civ. P. 50(c)(1). According to the magistrate judge, Dr. Nguyen was entitled to the conditional grant of a new trial, because the jury verdict was against the clear weight of the evidence on the issue of whether Creech's mouth was still immobilized by the elastic bands when he was seen at MCV's Oral Surgery Clinic on January

_____

Finally we note that the dissent seems to imply that Creech should have brought his serious medical need to the attention of Dr. Nguyen after November 29, 1990 by filing a prison grievance form requesting medical attention. See id. at 22-23. Given that the dissent does not take issue with our conclusion that a reasonable jury could find that Dr. Nguyen knew as of mid-December 1990 that Creech still had a serious medical need to be returned to MCV's Oral Surgery Clinic for post-operative care, the fact that Creech did not file a grievance form requesting medical attention after November 29, 1990 is completely irrelevant.

15

14, 1991. The magistrate judge also stated that the verdict might have been based upon Creech's testimony that the elastic bands immobilizing his mouth were still on when he saw the oral surgeon at MCV's Oral Surgery Clinic on January 14, 1991. The magistrate judge believed that Creech's testimony on this issue was false in view of the fact that Creech had filled out three prison grievance forms (on November 27, 29, and December 20, 1990, respectively) complaining that he needed post-operative care because the elastics in his mouth had broken. Creech's explanation at trial for the inconsistency between his trial testimony and his statements in the grievance forms is that he stated in the grievance forms that all the bands were broken in a "desperate attempt" to get somebody to listen to his plea for post-operative care.

We review the magistrate judge's conditional grant of a motion for a new trial for abuse of discretion, see Freeman v. Case Corp., 118 F.3d 1011, 1014 (4th Cir. 1997), cert. denied , 118 S. Ct. 739 (1998), recognizing that we are permitted to weigh the evidence and consider the credibility of the witnesses, see Poynter v. Ratcliff, 874 F.2d 219, 223 (4th Cir. 1989). When, as here, a new trial is granted on the ground that the verdict is against the clear weight of the evidence, we must exercise a closer degree of scrutiny and supervision than if the ground was that some undesirable or pernicious influence obtruded into the trial. See United States v. Tobias, 899 F.2d 1375, 1380 (4th Cir. 1990). A closer degree of scrutiny is warranted to protect the litigant's Seventh Amendment right to a jury trial. See id.

Exercising this closer degree of scrutiny and supervision than is normal in our review of a trial court's conditional grant of a new trial, we hold that the magistrate judge abused his discretion in conditionally granting Dr. Nguyen's motion for a new trial. In reaching this holding, we first note that whether Creech was still in intermaxillary fixation on January 14, 1991 is not a critical issue in the case, because the evidence shows that Creech could have started to incur permanent limitation to his jaw mobility as early as six weeks after surgery, with the limitation increasing as time passed without proper post-operative treatment or evaluation. Rather, the relevant issue is whether Creech was still in intermaxillary fixation in late December 1990 and early January 1991, the time period when Dr. Nguyen knowingly disre-

16

garded Creech's serious medical need to return to MCV's Oral Surgery Clinic.

On that issue, the jury heard essentially an equal amount of conflicting evidence. First, the jury heard testimony by Creech that some of the elastic bands keeping him in intermaxillary fixation broke the last week of November 1990, but that when Dr. Nguyen examined him on January 11, 1991 some of the bands were still in place. Although this testimony was inconsistent with statements made by Creech in the three prison grievance forms that he filed seeking to obtain post-operative care, Creech explained to the jury that he made the prior inconsistent statements in desperate attempts to draw the attention of prison officials to the fact that he had not been returned to MCV's Oral Surgery Clinic for post-operative care. The jury, in weighing the credibility of the evidence, was certainly entitled to accept or reject Creech's explanation for his prior inconsistent statements.

Second, the jury had before it Dr. Nguyen's deposition testimony given with his treatment notes from January 11, 1991 in front of him that at the time he examined Creech on January 11, 1991, the elastic bands were "still on," but they were loose enough for him to use a small pen light to view Creech's throat. (J.A. 151). The jury also had before it an errata sheet to Dr. Nguyen's deposition, which in substance changed his deposition testimony regarding the presence of the elastic bands on January 11, 1991 from "still on" to "no" longer still on. (J.A. 156). Dr. Nguyen told the jury that he changed his testimony because, upon his subsequent review of Creech's medical chart and "certain documents prepared by Mr. Creech in November of 1990," he believed his deposition testimony that the elastic bands were still on as of January 11, 1991 to be inaccurate. (J.A. 156). Once again, the jury, in weighing the credibility of the evidence, was entitled to accept or reject Dr. Nguyen's explanation for changing his deposition testimony. See Podell v. Citicorp Diner Club, Inc., 112 F.3d 98, 103 (2d Cir. 1997) (holding that when a party amends his or her deposition testimony, the original answers to the deposition questions may be fully considered by the trier of fact).

Third, the jury had before it a notation by Dr. Nguyen in Creech's medical chart that on January 11, 1991, Creech had a "limitation of

17

mouth opening secondary to teeth wiring in [sic] October 3," (J.A. 147), from which it could have reasonably inferred that at least some of the elastic bands were still on, because the metal arch bars themselves did not restrict Creech's mouth from opening. Fourth and finally, evidence of this notation was arguably offset by evidence that Dr. Nguyen ordered Creech's diet changed on January 11, 1990 from a liquid diet to a soft diet and prescribed Creech an antibiotic and cold medicine to be taken by mouth. However, even this evidence could have been construed by the jury as consistent with Creech's testimony that on January 11, 1991, his jaw was still in partial fixation and consistent with Dr. Nguyen's deposition testimony that on January 11, 1991, the elastic bands holding Creech's jaw in intermaxillary fixation were loose enough for him to see Creech's throat with a pen light.

In summary, the jury's verdict is certainly not against the clear weight of the evidence on the issue of whether Creech suffered harm as a result of not being free from intermaxillary fixation as of late December 1990 and/or early January 1991.[14] Because the magistrate judge's decision rested on his erroneous determination that the jury's verdict was against the clear weight of the evidence, we hold that the magistrate judge abused his discretion in conditionally granting Dr. Nguyen's motion for a new trial.

IV.

In conclusion, we hold that the magistrate judge erred as a matter of law in entering judgement as a matter of law in favor of Dr. Nguyen, and abused his discretion in conditionally granting Dr. Nguyen's motion for a new trial. Accordingly, we vacate the magistrate judge's entry of judgment as a matter of law in favor of Dr. Nguyen, vacate the magistrate judge's order conditionally granting Dr. Nguyen's motion for a new trial, and remand with instructions

_____

[14] We note that the jury could have fully credited Dr. Cyr's testimony that Creech was not in fixation on January 14, 1991 and still found that Creech remained in partial intermaxillary fixation in late December 1990 and/or early January 1991.

18

that the magistrate judge enter judgment in favor of Creech based on the jury's verdict.**15**

VACATED AND REMANDED WITH INSTRUCTIONS

WILLIAMS, Circuit Judge, dissenting:

I believe that the evidence presented during trial does not support the conclusion that Dr. Nguyen was deliberately indifferent to Creech's serious medical need to be returned to MCV for follow-up treatment. Therefore, the magistrate judge's decision to grant judgment as a matter of law was correct, and I respectfully dissent.

Because the majority has fully discussed the standards of liability under the Cruel and Unusual Punishment Clause of the Eighth Amendment as enunciated in Farmer v. Brennan, 511 U.S. 825 (1994), and its progeny, only a brief review of the controlling legal principles is necessary here.

To succeed on a claim under § 1983 for inadequate medical treatment under the Eighth Amendment, a prisoner must satisfy a two-part test, the first part of which is objective and the second part subjective. First, the plaintiff must demonstrate that he was deprived of an objectively serious human need. See Johnson v. Quinones, No. 97-2392, 1998 WL 234201, at *3 (4th Cir. May 12, 1998). Second, the plaintiff must prove that the prison official subjectively had a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). The state of mind requirement is met when the prisoner proves that the prison official acted with deliberate indifference. See Johnson, 1998 WL 234201, at *3. "Deliberate indifference entails something more than mere negligence . . . [and] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. Thus, prison officials must "know of and disregard" a prisoner's objectively serious medical need before liability attaches. Amos v. Maryland Dep't of Pub. Safety & Correctional Servs., 126 F.3d 589, 610 (4th Cir. 1997), vacated in

_____

**15** We note that on remand, Creech is free to make a motion seeking an award of reasonable attorney's fees as the prevailing party in a § 1983 case. See 42 U.S.C. § 1988(b).

19

part on other grounds, 66 U.S.L.W. 3474 (U.S. June 22, 1998) (No. 97-1113). The parties stipulated below that Creech had an objectively serious medical need; thus, we are concerned only with Dr. Nguyen's state of mind.

As noted, deliberate indifference requires that the prison official know of and consciously disregard the serious medical need. In this case, Creech needed to produce sufficient evidence from which a reasonable fact-finder could conclude that Dr. Nguyen both knew of his need for follow-up care at the MCV oral surgery clinic and also consciously disregarded that need. We agree with the majority that sufficient evidence was presented at trial from which a reasonable fact-finder could conclude that Dr. Nguyen knew that Creech needed to return to MCV.

I take issue, however, with the majority's analysis of the "disregard" portion of the deliberate indifference test. The Supreme Court has stated in reference to the disregard prong of the deliberate indifference test that "[p]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they respond[ ] reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844. I believe that the reasonableness of a prison official's actions must be assessed in context. See Wilson, 501 U.S. at 303 (stating that an assessment of a prison official's mental state "depends on the constraints facing the official" (emphasis deleted)). Because Dr. Nguyen's actions were reasonable under the circumstances, the magistrate judge's decision to grant judgment as a matter of law was correct.

The majority hinges its decision that Dr. Nguyen disregarded Creech's need for follow-up treatment on actions Dr. Nguyen could have taken. Specifically, the majority notes that Dr. Nguyen could have verbally instructed the appointment clerk that he wanted Creech to be seen as soon as possible at MCV[1] or that he could have called MCV personally, as the dentist, Dr. Harland, did in early January 1991. Further, although this argument was not pursued by the parties

_____

[1] Dr. Nguyen did indicate to the appointment clerks in writing that he wanted Creech seen "ASAP" on November 26, 1990, the date on which Creech missed his scheduled follow-up appointment at MCV.

20

in their briefs, the majority asserts that Dr. Nguyen could have consulted with the MCV oral surgery department by telephone to get information on appropriate follow-up care that could have been undertaken in the prison while Creech was waiting for his appointment to take place. See ante at 13-14.

I agree with the majority that Dr. Nguyen could have taken those actions. The trouble with the majority opinion, however, is that the mere fact that Dr. Nguyen could have treated Creech differently or more effectively is not adequate as a matter of law to show that he consciously disregarded Creech's needs. The appropriate question is whether the actions Dr. Nguyen actually took were reasonable under the circumstances. Only if the doctor's actions, considered in context, were an unreasonable response to the inmate's medical concern should we proceed to consider whether the doctor's unreasonableness rises to the level of deliberate indifference.

In § 1983 cases relating to the medical treatment of prison inmates, as in medical negligence cases, it is appropriate to assess whether Dr. Nguyen's actions were reasonable when compared to the standard of care provided by similarly situated doctors. See Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir. 1990) (noting that in § 1983 case the professional standard of care is relevant to a determination of whether a prison doctor is deliberately indifferent). During Creech's trial, two physicians testified as to the relevant standard of care for securing outside medical appointments for inmates. Dr. Harland testified that the doctors at the correctional facility had been discouraged from calling MCV directly and were instructed on several occasions to schedule appointments through the appointment clerks. Dr. Harland also testified that on occasion when a patient had an acute potentially life-threatening problem, he had called the residents at MCV directly to schedule an appointment. Dr. Harland testified, however, that Creech did not have such a condition.[2] Further, Dr. Harland stated that doc-

_____

[2] In fact, no medical testimony was presented at Creech's trial indicating that, as of January 11, his condition was considered to be either acute or an emergency. Thus, it does not appear that Dr. Nguyen misperceived the urgency of Creech's condition on November 26. Additionally, Dr. Cyr, the MCV medical resident, indicated that prior to January 14, no doctor from MCV had called the prison to inquire about Creech's overdue follow-up visit.

21

tors as a general matter were not kept informed of when inmates were scheduled for appointments and whether or not the inmates had missed scheduled appointments, nor was it expected for doctors to follow-up with the appointments clerks to ensure that their orders to make appointments were followed. Dr. Viol, the expert on the delivery of medical services in a correctional facility, testified that making the notation on the chart to reschedule the appointment at MCV as soon as possible satisfied Dr. Nguyen's standard of care and that it was not the practice of doctors to review the activities of clerical staff to ensure that they were undertaken.

This expert testimony did not provide a sufficient basis from which a reasonable jury could conclude that Dr. Nguyen responded unreasonably to Creech's condition. Although there was testimony during trial that prison doctors would occasionally call MCV directly for specialist referrals or to make special arrangments for an inmate with an acute medical need, Dr. Nguyen met the standard of care described by the experts as a matter of law. He wrote a note on Creech's chart on November 26, 1990, the very day that Creech missed his MCV follow-up appointment, stating that the appointment should be rescheduled as soon as possible. On November 26 Creech's condition was not acute. The expert evidence establishes that in this situation Dr. Nguyen had no duty to further inquire with the appointment clerks to see whether the appointment had been made or when it was scheduled,**3** and he was entitled to rely upon the clerks to do their job and schedule the follow-up appointment.

The majority contends that Creech was under Dr. Nguyen's care from mid-December to mid-January, but that tells only half of the story. Creech was under Dr. Nguyen's care only to the extent that he was one of over 400 inmates in a highly transient population at the Powhatan correctional facility reception center. Creech was never

_____

**3** In fact, due to the risk of escape, doctors at the prison were not notified that an appointment was scheduled until the day of the appointment. Even if Dr. Nguyen had personally arranged a follow-up appointment at MCV, he was powerless to ensure that Creech actually kept the appointment. Security concerns often preempted "medical runs." Testimony during trial indicated that if the facility were "locked down" for security reasons, "medical runs" were cancelled.

22

seen by Dr. Nguyen during this time period. Further, the record contains no suggestion that Creech filed a grievance form requesting medical attention for his jaw at any time after November 29.

The majority's interpretation of deliberate indifference places upon Dr. Nguyen the duty of taking extraordinary measures to micromanage both the care of one non-acute patient in a large prison population and the administrative duties of the appointment clerks.**4** Imposition of such a duty is not supported by the evidence presented at trial.

The magistrate judge was correct when it determined, as a matter of law, that Creech did not prove that Dr. Nguyen was deliberately indifferent to his serious medical need for follow-up care at MCV. As a result, I would affirm.

_____

**4** We note that an individual doctor should not be held liable for the shortcomings of the system in which he operates. If the onus of Creech's claim was that the system in place for handling inmate medical care was constitutionally deficient, such a claim would be cognizable against the warden or other management officials, not against the individual doctors at the facility. See generally Wilson v. Seiter, 501 U.S. 294, 296 (1991) (addressing a more generalized unconstitutional conditions of confinement claim).

23